CITED *in* State v. *Powers,* 4 *Zab.* 401; *State* v. *Blundell, Id.* 405; *State* v *Powers, Id.* 407; *State* v. *City of Elizabeth,* 4 *Dutch.* 112; *State* v. *Metz,* 2 *Vr.* 386; *State* v. *Cook,* 3 *Vr.* 340-348; *Cook* v. *State,* 4 *Vr.* 478; *State* v. *Hancock,* 6 *Vr.* 545.

---

THE PRESIDENT AND COUNCIL OF THE CITY OF PATERSON v. THE SOCIETY FOR ESTABLISHING USEFUL MANUFACTURES.

1. The legislative power in all representative governments, and in New Jersey by the express words of the constitution, is vested in the legislature, and cannot be exercised directly by the people, or in any other mode than that prescribed by the constitution, and an act passed in any other way is void. Whether submitting the expediency of a law framed by the legislature to the consideration of the people before it takes effect, is a delegation of legislative power. *Quere.*

2. A provision that a municipal charter shall not take effect until approved of by a majority of the inhabitants of the district incorporated, is not the delegation of legislative power: it is the mere question of the acceptance of a charter. The legislature cannot force individuals to accept a private charter, nor even the crown, in Great Britain, compel the acceptance of a municipal charter. Parliament there, or the legislature here, may compel such acceptance. If the charter of a city were submitted to the vote of the electors of the county or state, the question would be different.

3. The legislature has at all times the right to change or repeal a municipal charter; and this right is not changed or impaired by the fact that a municipal charter is granted in the same act that creates a private corporation, whose rights cannot be changed or repealed without their consent.

4. Assessments for opening or paving streets are neither "taxes, charges, or impositions" within the meaning of the charter of the Society for the Establishment of Useful Manufactures; such improvements are not for the benefit of the public, but for that of the property assessed therefor.

This was a case certified to this court from the Passaic county circuit, for the opinion of this court as to the judgment to be given upon a special verdict found in an action of *assumpsit* brought by the plaintiffs in that court.

The special verdict found that the plaintiffs had, pursuant to the directions of their charter, by ordinance, caused Mill street to be graded and paved, and caused $535.11 of the expenses to be assessed upon lots owned by the defendants fronting on Mill street, and that the plaintiffs had also, by ordinance, directed the side walks of said street to be flagged according to the ordinance; and, upon the neglect of the defendants to have the same done, the plaintiffs caused the work to be done, and paid for it out of the city treasury, in the manner provided in such cases by the city charter. The action in the circuit was brought to recover the assessment and the money paid for regulating the side walk, both of which, by the provisions of the charter, could be recovered by action.

The special verdict further found that the premises were within the limits of the city of Paterson, and that the same was within the district of six miles square selected by the defendants as the principal seat of their manufactures, and that William Paterson, governor of New Jersey, issued a proclamation, under his hand and seal, dated on the 17th day of December, 1792, in which he declared that the inhabitants of said district had become a body politic and corporate, by the name of "the Corporation of the town of Paterson," by reason of a majority of the inhabitants of said district having failed to signify their dissent from such incorporation, as provided for in said charter of the defendants. The question submitted was, whether the plaintiffs were entitled to recover the sums

so assessed for grading and paving the street, and the sum so paid for regulating the side walk, or either of them.

Argued before the CHIEF JUSTICE and Justices OGDEN and HAINES, by Mr. *Zabriskie,* for the plaintiffs, and Mr. *Dayton* and Mr. W. *Pennington* for the defendants.

Mr. *Dayton,* for defendants.

I. We contend that the city charter, by virtue of which these assessments were made, is void, because it was unconstitutionally referred to the people by the legislature, and also because it conflicts with and repeals the municipal corporation provided for by the charter of the defendants.

1. The legislature, by 25th section of the charter of city of Paterson, passed March 19th, 1851, (*Pam.* 444) submitted it to a vote of the people of the town whether they would become incorporated or not.

The creating a new municipal incorporation is an act of legislation, and, by the constitution, all legislative power is vested in the senate and assembly, and cannot be by them delegated to any one nor to the people. *Bradley* v. *Baxter,* in New York Supreme Court, in *Am. Law Reg.* for September, 1855 ; 6 *Barr.* 507, *Parker* v. *Commonwealth ;* 8 *Harring* 479, *Rice* v. *Foster.*

2. This city charter changes the society's charter of 1791. Section 26th provides for this municipal corporation. The society have an interest in it; it is part of the contract, and cannot be repealed.

Again, there cannot be an *imperium in imperio.* Section 24th of this city charter repeals township acts, but not the "corporation of the town of Paterson." 3 *Zab.* 529, *State* v. *Minton.*

II. We contend that these assessments cannot be recovered from the society, because, by the 4th section of their charter, they are exempted from all taxes, *charges, and impositions* whatsoever, except taxes for the use of this state. These are charges and impositions.

The object of the 4th section was to protect the property of the society from taxes, except for state purposes, and that only

at a *certain* per cent. The local taxes were always higher than the state taxes, and it was more important to protect it from them.

And though doubts may be raised upon the words, the provision is to be construed according to the intention in view in framing it. This act is understood to have been drawn by Alexander Hamilton, and the object of that far seeing statesman was to protect the society from popular fury and the acts of demagogues. He seems to have foreseen the attempt now made to tax the property of this society twice or three times, and has most carefully provided for it here.

And this exemption from local taxation is in accordance with the more recent provision in railroad charters, by which the companies are exempted from all local taxation, and the whole benefit of the tax upon them reserved to the state.

It may be objected that the imposition of a state tax would be impracticable and difficult; it would require a special act each year; but it was intended by this act to make it difficult to tax the society.

Mr. *Zabriskie*, for plaintiffs.

1. As to the first point taken, that the charter is void because unconstitutionally submitted to a vote of the people, it is not necessary here to discuss the question, if the legislature can submit any *law* to popular vote. If that be held unconstitutional, this is an entirely different question. This act was not a general law, it was a charter; a municipal charter, by which a limited number of people were incorporated with certain powers. The only question submitted to them was, whether they would accept the charter.

It is held that individuals cannot be incorporated by a private charter without their consent.

The legislature *might* force a municipal corporation upon any district, but it *may* allow them to accept or reject it. *Willock on Corp.* 25; 4 *Wheat.* 593.

Again, the constitutional provision, that the legislative power shall be vested in the two houses, has never been held to abrogate the power of creating municipal corporations, as cities,

townships, and counties, each exercising, to a certain extent, a local legislative power. And if a city, by its councils, can pass ordinances for police regulations, and a variety of other purposes of a legislative character, the people of that district can be allowed to decide whether that municipal power shall exist among them.

2. It is argued that the city charter is void because it interferes with and abrogates the municipal corporation created by the charter of the defendants, which the 26th section says is for their benefit; and that this charter is a contract which cannot be repealed.

To this we answer—first, that the municipal corporation of the town of Paterson referred to has no existence in point of fact, and never had. For sixty years there has been no use of this corporation or any of its franchises. Notoriously, and by public laws, the courts of Passaic county and the officers of the township of Paterson have exercised all the jurisdiction and powers which by this charter were exclusively vested in the municipal courts and officers.

Secondly. That this was a municipal corporation, and although created by the same act that created the civil body politic, it did not thereby lose its essential characteristics; and that municipal corporations can always be regulated, modified, and repealed by the legislature that created them. 2 *Kent's Com.* 305; *Angell & Ames on Corp.* 651; 4 *Wheat.* 518, *Dartmouth College* v. *Woodward;* 3 *Zab.* 484, *State* v. *Branin.*

3. It is insisted that the fourth section of the society's charter exempts them from all taxes and from these assessments as *charges* and *impositions*. The words of the act, as was insisted at the last term in arguing the case of the *State* v. *Flavell*, are clear. They state positively that after the end of ten years, the exemption, so far as relates to the lands of the society, shall cease, and no provision for regulating the manner in which a tax for the use of the state must be levied is inconsistent with such limitation, nor can it be construed into a repeal of the limitation, so as to revive the exemption as to local taxes.

But we are told that the errors of the act must be controlled by its known object and intention, and that this act is said to have been drawn by Alexander Hamilton, and that his sagacity has provided, in its usual known direction, for the protection of the privileges created by this act against popular fury and the arts of demagogues.

It always seems unsatisfactory that the meaning of an act should be derived from tradition as to what were the intentions of its framers, rather than from the words of the act, even when these traditions were derived from those members of the bar who were "lights to our feet and lamps to our path." 3 *Harr.* 49. If the framer of a statute has in his breast a meaning or intent which he does not succeed in transmitting into the language of the act, it seems to me that only so much of his meaning as he has incorporated into the words of the act should be held to be law. The lawgiver must not only *intend*, he must *prescribe* the rule. And it is the intention which the act, as *prescribed* and *published* for the government of the people, makes known to them as the rule, and not that other and different intention which the legislator had in his breast, or confided to a few select friends, that is law.

It is always unsatisfactory to inquire out of a statute for the intention of its makers, but if we do, the intention of the legislature is to be regarded, as well as that of the draftsman of the act. And the journal of the house is, perhaps, as reliable as the traditions of the defendants. By the journals, (*page 54 to 62*) we find that this bill was five times considered and amended in the committee of the whole, and that it was the only bill of the session that was so considered. Among the opponents of the bill (*page 70*) we find the names of well known revolutionary "demagogues," active in exciting the "popular fury" against the "taxes and impositions" of their late sovereign. The states general, convened by Neckar to relieve the financial difficulties of the French king, had just adjourned; they found that all who could pay taxes were (as these defendants would be) privileged from contributing ·their share to the common burthens of government. And these demagogues of the revolution took a different side in the con-

tests of that day from the far seeing statesman and friend of privileged orders who is alleged to have drafted this act. In the contest between him and them he introduced a clause exempting the lands from taxation; they succeeded in the amendment limiting it to ten years: he, for a reasonable protection, limited the state tax to a fixed per cent., as other property; not extending it to local taxes, as in these the legislature who must regulate them had no temptation to abuse. Each side in this contest had a different intention; each partly succeeded in expressing it in the act. The intention of neither party, then, ought to control the construction of the act, except so far as they have incorporated it in the words of the act; or the act must be construed by the fair meaning of its words.

But if the defendants are exempt from tax, this is not *a tax* or charge or imposition within the meaning of the act. It is a municipal regulation for the common improvement of property by adjoining owners, and not for the benefit of the public, like the regulations of the fence and meadow acts.

That these assessments are not taxes, has been decided under like exemptions. 11 *Johns.* 77, *In re The Mayor of New York* v. ———— ————; 1 *Harris* 104 (13 *Penn. St. R.*), *Northern Liberties* v. *St. John's Church.*

Mr. *Pennington*, in reply.

The questions in this case are questions of delicacy and difficulty arising between the People of Paterson and the Society for Establishing Useful Manufactures. In this case they are fairly made, and must be met. The facts are clear, and distinctly raise the questions of law.

1. The first question that comes up in this cause arises incidentally; it is the validity of the charter of the city of Paterson. This charter is brought in question on two grounds—(1.) Can a legislative act be submitted to the people? The constitution is explicit; all legislative power is in the senate and assembly, and on this ground, in other states, laws have been declared void.

The answer to this is, that the provision in this case submitted is the mere acceptance of a charter by the corporators.

But this is not like a private charter. A municipal charter is a regulation by law for the government of a particular portion of the state; it is no contract between the parties, but is a public law repealable by the legislature at will. 2 *Kent's Com.* 305.

Another answer is, that the legislature may and does delegate many of its powers. To this we reply, that in some cases it may, but never the law making power. Every man is entitled to the opinion and vote of the whole legislature before his rights are invaded.

(2.) Can the legislature create this new corporation within the limits of that erected by the charter of the society? This charter is a contract. Section thirty-seventh provides that it shall not be void for non user, and this new city charter in effect repeals that part of the old charter which relates to the same subject.

2. But the principal question in this case is, are the company liable to taxation? The general rule of construction certainly is, that no one will be exempt from taxation, unless exemption is given by clear words; but that rule does not apply here fully. By section 37th, the charter is to be construed most favorably for the society. If, therefore, any doubt is thrown over the intention of the act in the fourth section, the doubt must be in favor of exemption.

The case cited from 2 *Zab.* does not sustain the adverse position; it is not a similar case; and if the court will examine it carefully, it will be found to have no bearing upon the question.

These assessments for streets may not be *taxes*, but the words of the charter go much further than taxes, they include "assessments and impositions," which terms will include all that is found by the special verdict.

The opinion of the court was delivered by the CHIEF JUSTICE.

By an ordinance of the city of Paterson, it was ordained that a section of Mill street, in that city, should be graded,

the gutters paved, and the side walks curbed and gravelled. Under the provisions of the ordinance, the grading and paving were done by the city, and the amount assessed ratably on the several lots fronting on the street. The curbing and gravelling of the side walks was required to be done by the owners of the lots in front of their respective premises. The defendants were the owners of seventy-three lots fronting on the street where the improvements were made. Pursuant to the provisions of the ordinance, the street was graded and paved by the city ; and the expenses having been paid out of the city treasury, a proportionate share thereof, amounting to $535.11, was assessed upon the defendants, as the owners of the lots.

The defendants having failed to curb and gravel the side walks in front of their lots, in compliance with the requirements of the ordinance, that work was also performed by the city, at an expense of $452.50, and the amount paid out of the city treasury. To recover the moneys thus paid by the city, this action is brought.

No formal exception is taken to the proceedings of the city authorities. It is not questioned that the work was done and the assessment made in compliance with the provisions of the charter and of the city ordinances. The only questions discussed upon the argument are those involving the substantial rights of the parties.

1. The first ground relied upon in defence is, that the charter of the city is null and void.

A void charter can legalize no act done under it. The better opinion therefore is, that where it is alleged not that the charter is forfeited, but that it is null and void, that fact may be inquired into collaterally and incidentally. *Ang. & Ames on Corp.* (*4th ed.*) § 778.

The city of Paterson was incorporated by an act of the legislature, passed on the 19th of March, 1851. The district incorporated was identical with the limits of the *township* of Paterson. The act of incorporation contains a provision that it should not go into effect unless the assent of a majority of the electors of the township of Paterson should be first ob-

tained. There is a further provision, that if the charter should not be accepted at the first election, it should be lawful for the township committee to submit the act to the voters of the township at a special town meeting, to be called for that purpose, for their assent or refusal, whenever and so often (not exceeding once in each year) as the township committee might deem proper; and whenever a majority of the persons voting at such town meeting should be found in favor of the act, it should go into operation.

The objectionable character of this last provision is obvious. Of its legal effect it will be unnecessary to express an opinion, inasmuch as no action was had under it. The charter was in fact accepted at the first election provided for in the act, a majority of the voters being then found to be in its favor. The only inquiry will be, whether the provision of the act, that it shall not go into effect until the assent of the electors within the incorporated district be first obtained, renders the act unconstitutional and void.

Whether a statute is rendered unconstitutional by the fact that its operation is made to depend upon the will of the people, expressed through the ballot box, is a question which has recently given rise to much discussion and to a decided diversity of judicial opinion.

In 1845, the question came before the Court of Appeals of the state of Delaware, upon a law of that state authorizing the people to decide by ballot whether the license to retail intoxicating liquors should be permitted among them. After a very elaborate argument, and upon a thorough examination of the principles involved, the court unanimously pronounced the law unconstitutional and void.

A similar law of the state of Pennsylvania was pronounced unconstitutional by the Supreme Court of that state, in *Parker* v. *Commonwealth*, 6 *Barr*. 507. In the latter case, two of the five judges composing the bench dissented, and united in an opinion sustaining the validity of the law. 7 *Penn. Law Journal* 215.

The statute of the state of New York, (of the 26th of March, 1849,) establishing free schools, contained a similar

clause, submitting the question of its operation to a popular vote, which ratified the act. The statute was pronounced constitutional by the Supreme Court of that state, sitting in the *seventh* judicial district, one of the three judges dissenting. *Cole* v. *Stevens*, 9 *Barbour* 676.

The same law was subsequently pronounced unconstitutional and void by the unanimous opinion of the Supreme Court, sitting in the fifth judicial district, and a similar decision is there stated to have been rendered by the Supreme Court, sitting in the third district. *Bradley* v. *Baxter*, 1 *Am. Law Reg.* 658.

Much as the authorities differ in their conclusions, they all concur in the great principles by which the question is to be settled. It is conceded as indisputable—

1. That as well by the fundamental theory of a representative democracy as by the express provision of the constitutions of the states of the Union, legislation cannot be exercised directly by the people.

2. That the legislative power cannot be delegated; that it can be exercised only by the functionaries and in the mode designated and prescribed in the constitution.

3. That a law enacted by any other authority, or in any other mode than that prescribed by the constitution, is void.

The only ground of diversity is upon the simple point, whether submitting the question of the expediency of a law to the test of a popular election be in fact a delegation of the legislative functions. It is insisted that where the operation of the law is made to depend upon a popular vote upon the expediency of the enactment itself, the vote by the people is virtually an act of legislation, and that the law derives its vitality not from the will of the legislature, but from a source not recognised by the constitution.

From this statement of the principle involved, it is apparent that the present case does not at all come within its operation. Had the question been submitted to the people of the state, or of the county of Passaic, whether it was expedient for the legislature to grant a city charter to the township of Paterson, and the operation of the law had been made to depend upon

the result of that election, the constitutional difficulty would have been fairly presented. But the question that arises upon this statute is simply whether a charter granted by the legislature to a municipal corporation may constitutionally be submitted to the corporators for their acceptance before it goes into operation, and whether its going into effect may be made to depend upon their acceptance or rejection.

The question submitted by the act to the inhabitants of the district was submitted to them not as a part of the sovereign people, but simply as corporators. Nor was the question upon the expediency of the statute or of any particular provision óf the charter, but simply whether they would accept the charter tendered to them by the legislature. Their vote was an act of acceptance, not of legislation. The Supreme Court of Pennsylvania held that the erection of a municipal corporation does not fall within the principle decided in *Parker* v. *Commonwealth*. They declare that " the erection of a township, or the creation of a new district for merely municipal purposes or convenience in the transaction of business, is in no degree similar to the exercise of the law making power." *County* v. *Quarter Sessions,* 8 *Barr.* 395; *Commonwealth* v. *Painter,* 10 *Barr.* 214.

Under the British constitution, charters are usually granted by the crown, in the exercise of its prerogative. It is essential to their validity that they be accepted by the corporators; but it was never imagined that the act of acceptance was an exercise of the royal prerogative: no more is an act of acceptance of a charter granted by the legislature an act of legislation.

Government cannot enforce the acceptance of a private charter upon a corporation without consent, for no corporator can be subject to the inconvenience of it without accepting of and assenting to it. *Rex* v. *Vice Chancellor,* 3 *Burr.* 1661; *King* v. *Passmore,* 3 *Term Rep.* 240; *Ang. & Ames on Corp.* (*4th ed.*) § 81, 33; *Bailey* v. *The Mayor, &c.,* 3 *Hill* 543.

And, under the constitution of the United States, no change

can be made in a private charter without the consent of the corporation. *Ang. & Ames*, § 767.

In regard to public or municipal corporations, sound principle requires that they should not be forced upon the corporators against their consent. Such is the well settled principle in England in regard to all municipal corporations created by the crown. Though the king has the power to create corporations, he cannot impose them on his subjects without their consent. Whether it be an original act of incorporation, or a charter by which the franchises of a preëxisting corporation is altered, it must be accepted by a majority of those to whom it is granted. *King* v. *Amory*, 1 *Term Rep.* 572 ; *Willcock on Corp.* 30.

It is not denied that a municipal corporation may be, either by the legislature or by the British parliament, by virtue of the plenitude of its power, imposed upon the corporators without their consent. It doubtless may be done. *Willcock on Corp.* 25.

But it would be alike against the genius of our government and the spirit of the British constitution. It would be, in the nervous language of Lord Thurlow, an atrocious violation of principle, which would cut every Englishman to the bone. Almost invariably in practice municipal charters have been granted or altered by our legislature, in accordance with the expressed will of the corporators. The exceptions are very rare. They have occurred in seasons of high excitement; they cannot be reconciled to sound principle. They are to be regarded as beacons to be shunned, not as precedents to be followed.

Before imposing the burthens of a city charter upon a people, the legislature not only may, but ought to require the assent of the corporators. It is designed as a benefit, but it brings heavy burthens, which ought not to be imposed upon a people without their assent. The only question then is, must the consent be obtained prior to the passage of the law, or may the charter be granted and submitted to the corporators for their acceptance.

In the case of a private charter, it was conceded upon the

argument that the act of incorporation might be made to depend upon the assent of the corporation subsequently given.    But the acceptance of a charter by the vote of a municipal corporation is no more an act of legislation than the acceptance of a charter by the votes of the members of a private corporation.    If in the one case the operation of the act may be made to depend upon the vote of the corporation, it may with equal propriety in the other.

. The charters of many municipal corporations contain a similar clause.    It will be found in the charter of the city of Newark (passed February 29th, 1836,) and in the charter of the city of Trenton (passed March 7th, 1837).    The act further to amend the charter of the city of New York, passed April 12th, 1853, contains a similar provision.    This act is particularly worthy of notice, as it was passed almost contemporaneously with the decision of their Supreme Court, that a similar provision in the school law rendered the act unconstitutional.    Almost immediately after that decision the amended charter was submitted to the vote of the electors of the city of New York, and was accepted.

The retrocession of the county of Alexandria, in the District of Columbia, to the state of Virginia, made by act of congress of July 9th, 1846, submitted the question of retrocession to a vote of the qualified electors of the county.    The act was to take effect only with their consent.

A provision similar in principle is embraced in the charter of incorporation of the defendants.    The district selected as the principal seat of their intended establishment was, with the assent of the inhabitants, expressed in the words designated in the charter of the society incorporated under the title of " the Corporation of the town of Paterson."    The defendants maintain that this municipal corporation still subsists. The validity of the charter has never been questioned, and yet, if the position assumed by the defendants to invalidate the charter of the city be tenable, the original charter of the town of Paterson is necessarily void.    At the date of the society's charter, it was not usual to refer the acceptance of a municipal charter to a vote of the corporators.    The charter

was usually granted on the application of the corporators. But the charter of the society being granted at the instance of private individuals, the municipal incorporation included in the charter was made to depend upon the express assent of the corporators.

The second objection is, that the charter of the city of Paterson creates a new municipal corporation within the limits of the corporation created by the charter of the Society for Establishing Useful Manufactures. The objection is two fold, *viz.* 1. That it is a violation of the charter of the society, having been done without their consent. And 2. That it creates two municipal corporations within the same territory having similar powers and privileges. Neither objection is tenable. The charter of the corporation of the town of Paterson, though granted by the same act that incorporates the society, creates essentially a distinct corporation. The one is a private, the other a municipal corporation. The corporators of the one are the subscribers to the stock for manufacturing purposes, of the other the inhabitants of the incorporated district. It was no doubt supposed that the municipal corporation would promote the objects of the society. But the municipal corporation being created, its members are vested with all the rights and privileges of other public corporators, without being in any wise subject to the control of the incorporated society. This principle would apply if the members of the society had themselves been created a municipal corporation. In dealing with chartered rights, regard is always had rather to the character of the rights granted than to the nature of the corporation. A municipal corporation, exercising powers conferred not for public purposes but for their private benefit and emolument, will be regarded *quod hæc* as a private company. And the converse of the principle is equally true. *Bently* v. *The Mayor of New York*, 3 *Hill* 531.

On both claims let judgment be entered for the plaintiff.

CITED *in State v. Blundell, 4 Zab. 403 ; State v. Robertson, Id. 506 ; State v. Newark, 3 Dutch. 188–190–192 ; State v. Newark, 6 Vr. 162 ; State v. Common Pleas of Morris, 7 Vr. 74 ; Rader v. Road District of Union, Id. 276 ; State v. Newark, Id. 479 ; State v. Elizabeth, 8 Vr. 332.*